THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY *et al.* v. J. B. COOK *et al.*

RAILROAD LAND GRANT—*Location of Route.* By act of congress of July 26, 1866, the Union Pacific Railway Company, southern branch, afterward the M. K. & T. Railway Company, received a grant of right-of-way for its road 200 feet wide through the reserved and ceded lands of the government. Prior to December 24, 1867, the latter company surveyed its line of road, and filed its map designating its route, with the secretary of the interior. October 9, 1869, one Hodges, one of the grantors of the defendant J. B. Cook, purchased of the government the land in dispute. Afterward, in May and June, 1870, the railway company changed the line of its road and built it across the land in dispute, the original location not having touched the quarter-section to which the land in question belongs. *Held,* That by the survey of its line, and the filing of its map designating the route of its road, the company exercised its right under its grant, and could not reclaim it two years and a half afterward, on changing its line of road, so as to affect the rights of Hodges, or his grantees.

*Error from Labette District Court.*

EJECTMENT. The case is stated in the opinion.

*T. N. Sedgwick,* for plaintiffs in error.

*Case & Glasse,* for defendants in error.

Opinion by STRANG, C.: Action of ejectment to recover possession of the following-described real property, situated in Labette county, Kansas, to wit: Commencing on the north line of Main street, in the city of Chetopa, at a point 50 feet west of the center of the main track of the Missouri, Kansas & Texas Railway; thence north 100 feet, on a parallel with the center of the main track of said railway; thence west 50 feet; thence south on a line parallel with the main line of said railway 100 feet, to the north line of Main street; thence east along the north line of Main street to the place of beginning, being a portion of the land claimed by the plaintiffs as a right-of-way in the city of Chetopa. The defendants filed a joint answer, denying that the plaintiffs had any legal estate in the

land described, or a right to recover the possession thereof. At the February term, 1889, the case was tried by the court without a jury, on the following agreed statement of facts:

"It is hereby stipulated and agreed that, upon the trial of the above-entitled action, the following facts shall be admitted:

"1. The Missouri, Kansas & Texas Railway Company was, on the 25th day of September, 1865, duly organized as a corporation, under the name of the Union Pacific Railway Company, southern branch, and on the 3d day of February, 1870, its name was duly changed, and made The Missouri, Kansas & Texas Railway Company; and it is the railway company referred to in the act of congress approved July 26, 1866, entitled 'An act granting lands to the state of Kansas to aid in the construction of a southern branch of the Union Pacific railway and telegraph from Fort Riley, Kansas, to Fort Smith, Arkansas.'

"2. The acceptance of the terms, conditions and impositions of said act by the said Union Pacific Railway Company, southern branch, was signified in writing, under the corporate seal of said company, duly executed, pursuant to the direction of its board of directors first had and obtained; which acceptance was made and deposited with the secretary of the interior within one year after the passage of this act.

"3. The land in the petition described is a part of the lands known as the Osage ceded lands, granted to the United States by the treaty between the United States of America and the Great and Little Osage Indians, proclaimed January 21, 1867.

"4. Prior to the 24th day of December, 1867, a line was surveyed for the route of said railroad by G. M. Walker, then chief engineer of said company, which was the line from which the lands mentioned in stipulation No. 7, herein, were withdrawn from the market, but that line did not touch the southwest quarter of section 34, township 34, range 21, which includes the land described in plaintiffs' petition in said case; and afterward, and between May 1, 1870, and June 6, 1870, said company located its road on the line where now operated, and built same in substantial compliance with said act of congress; but the route of said road, on its present location, has never been approved by the president of the United States, unless such approval is shown by the other facts herein admitted.

"5. The premises in plaintiffs' petition demanded lie

wholly within 100 feet of the center line of the main track of the railway so built and constructed as aforesaid, the center line of said main track being the center of the right-of-way of railway company.

"6. On the 1st day of September, 1880, the said Missouri, Kansas & Texas Railway Company leased said railway to said Missouri Pacific Railway Company, which has since possessed and operated the same as such lessee.

"7. Upon the completion of said railway through said Osage ceded lands, the president of the United States issued to said Missouri, Kansas & Texas Railway Company patents, under said act of congress approved July 26, 1866, for the alternate sections of land designated by odd numbers, to the extent of five alternate sections per mile on each side of said railroad, which are the same patents set aside in the case of *M. K. & T. Rly. Co. v. United States*, 92 U. S. Rep. 645.

"8. The quarter-section including the land in question was entered and purchased by one W. A. Hodges from the government of the United States on October 9, 1869, and a certificate in due form was on that day, by the proper officers, issued to him therefor; and thereafter, and on November 1, 1870, a patent in due form was issued therefor, pursuant to the said entry, by the government of the United States to said patentee, Hodges, which was duly signed and executed, and a perfect chain of title from said Hodges, patentee, now runs to and terminates in said defendant J. B. Cook, and he is the owner thereof, unless the same is owned by the plaintiffs, by virtue of the facts herein admitted and the law governing the same; except Printz is in possession of the premises in controversy as the tenant of defendant Cook.

"9. None of the land in dispute lies within 50 feet of the line of the center of the main track of said railroad, nor do defendants claim any part of the strip of land within 50 feet of either side of the center of said track. The plaintiffs, at the time of constructing said road, erected a depot building on its right-of-way, and the land on which said building stands is adjacent to the land in dispute; which said depot has been used all the time since its erection for the purpose of receiving freight and passengers for shipment. Nor do defendants claim any ground on which any side-tracks of said railroad are now located."

On the facts as above set forth, the court found for the defendants and entered judgment accordingly. A motion for

new trial was overruled. The plaintiffs demanded, on the journal, another trial. The first judgment was set aside, and another trial was had on the same facts, and a second judgment for the defendants was entered, followed by another motion for new trial, which was overruled.

The claim of the plaintiffs to the land in dispute is based upon a right-of-way grant contained in an act of congress of July 26, 1866. The first section of said act gives the railroad company named therein a right-of-way through the reserved and ceded lands of the government 200 feet wide, while by the sixth section the road is granted a right-of-way through the public lands only 100 feet wide. The land in question was a part of the lands reserved for the Osage Indians, at the time of the passage of the act under which plaintiffs' claim is made, but were ceded to the government January 21, 1867. The plaintiffs claim that the grant to the company of the right-of-way was a present grant, and took effect immediately upon passage of the act. We agree with the counsel for the plaintiffs that the grant was a present one, and that, so far as the grant itself is concerned, or the right of the company to locate and have a right-of-way for its road 200 feet wide through reserved or ceded lands, it took effect immediately. But we understand that until the grantee exercises the right secured by the act, by definitely locating its road, the grant is afloat, and while the grantee has a vested right in the grant to the extent of a right to locate its road and claim 200 feet for its right-of-way through reserved or ceded lands, such right does not attach to any particular tract of land until the road is located, and to that extent, and in that sense, the grantee has no vested right in any particular piece of land for a right-of-way until the road is definitely located. The grantee has a vested right, a fixed and indefeasible right, from the passage of the act, to a strip of land 200 feet wide through the reserved and ceded lands of the government for a right-of-way, which shall take effect and attach to the land on the location of its road, but no vested right in any particular piece of land until the location of its road. When, however, the location is made and the

grant attaches, it relates back to the inception of the grant, the passage of the act containing it. We also understand that when the grantee elects to attach his grant to any particular tract of land by the definite location of its road, it has claimed its grant, and exhausted its right thereunder, and cannot reclaim it elsewhere.

*Location of route; not reclaimed, when.*

"This case stands thus: The corporators had the power to locate and construct a railroad. They could exercise this right but once without further grant. To accomplish this object, a most important attribute of sovereignty was bestowed on them by the legislature—the extraordinary reserve power of subjecting the property of private individuals to public use. If it were intended that this should be a continuing power, one that might be exercised, and again reëxercised again and again, as often as might suit the convenience of this company, the legislature should have so declared in express terms. They have not done so." (*Moorhead v. L. M. Rld. Co.*, 17 Ohio, 351.)

"This extent of country is not all appropriated to the use of the road, but only so much as may be necessary for a track; its right to it is simply one of selection; and when it has made its selection, its right over all the other territory ceases. This principle is distinctly decided in the case of *Moorhead v. L. M. Rld. Co.*" (*L. M. Rld. Co v. Naylor*, 2 Ohio St. 238.)

When did the plaintiff definitely locate its road, so that its grant of the right-of-way attached? It claims it located it when it built it where it now is in 1870, and not before, while the defendants claim the company definitely located its road prior to December 24, 1867, on the Walker survey, which location did not touch the quarter-section of land to which the piece in dispute belonged. We are of the opinion that the defendants are right in their contention that the company definitely located the line of its road prior to December 24, 1867, and that by so doing it exhausted its rights under the grant contained in the act of July 26, 1866, at any rate so far as the intervening adverse rights of third parties are concerned; and as the defendant Cook's grantors purchased the land after the 24th of December, 1867, and before May, 1870, to wit, October 9, 1869, he had rights in the land prior to 1870 that could not be affected by the relocation of the plaintiff's road. The

survey of the plaintiff's road by Walker was followed by the
company filing a map with the secretary of the interior show-
ing the route of its road, and asking that the lands along its
line thus established be withdrawn from the market, until the
company had selected its lands. This we think constituted a
definite location of its road by the company, and an exercise
of its grant, and when thereafter it changed its route, its loca-
tion was subject to the rights before then obtained by Hodges
in the land in dispute. The fourth section of the act of July
26, 1866, among other things states: "That as soon as said
company shall file with the secretary of the interior maps of its
line, describing the route thereof, it shall be the duty of the
secretary to withdraw from the market the land granted by
this act." This section confers upon the grantee the right to
file with the interior department a map describing the route of
its road, and made it the duty of the secretary of said depart-
ment, when said map was filed, to withdraw from the market
the lands granted by the act.

It is said by the plaintiffs that the only object in filing the
map was to secure the withdrawal of the lands granted by
the act, and that filing of the map had nothing to do with
the right-of-way. It is true the withdrawal of the lands
granted was the object to be obtained by the filing of the map,
but it is also true that that object could not be attained except
by filing the map as evidence of the location of the line of road.
And the company, having filed it as evidence of the location
of its road for that purpose, cannot afterward, and after it
has secured that purpose, say that is not evidence of the loca-
tion of its road, for the purpose of enabling it to relocate its
right-of-way.

"We are of the opinion that the position of the claimant is
the correct one. The route must be considered as definitely
fixed when it has ceased to be the subject of change at the vo-
lition of the company. Until the map is filed with the secre-
tary of the interior, the company is at liberty to adopt such a
route as it may deem best, after an examination of the ground
has disclosed the feasibility and advantages of the different
lines. But when a route is adopted by the company, and a

map designating it is filed by the company with the secretary of the interior and accepted by that officer, the route is established; it is, in the language of the act, 'definitely fixed,' and cannot be the subject of future change so as to affect the grant, except on legislative consent. No further action of the company is required to establish the route." (*Van Wyck v. Knevals,* 106 U. S. 360.)

"For we are of the opinion that, under this grant, as under many other grants containing the same words, or words to same purport, the act which fixes the time of the definite location is the act of filing the map or plat of the line in the office of the commissioner of the general land office. . . . Until then many rights to the lands along which the road finally runs may attach, which will be paramount to that of the company building the road. After this no such right can attach, because the right of the company becomes by that act vested. . . . It selects for itself the precise line on which the road is to be built, and it is by law bound to report its action by filing its map with the commissioner, or rather in his office. The line is then fixed. The company cannot alter it so as to affect the rights of any other party." (*Railway Co. v. Dunmeyer,* 113 U. S. 629.)

Without looking into the question raised by the statute of limitations, we recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.